UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

UNITED STATES LIABILITY INS. CO. and    :          04 Civ. 0502 (CSH)
MOBILE AIR TRANSPORT, INC. by       :
UNITED STATES LIABILITY INS. CO.,     :
as Subrogee,                    :
                                     :
               Plaintiffs,     :
                                     :       MEMORANDUM OPINION
        -against-          :         AND ORDER
_____ :
MOUNTAIN VALLEY INDEMNITY     :
COMPANY,                     :
                                     :
              Defendant.    :

------------------------------------------------------------ x

HAIGHT, Senior District Judge:

      In this diversity action, plaintiffs United States Liability Insurance Co. ("U.S. Liability"), and

Mobile Air Transport, Inc. ("Mobile Air"), by U.S. Liability as subrogee, sued defendant Mountain

Valley Indemnity Co. ("Mountain Valley") for breach of an insurance policy. Presently before the

Court is U.S. Liability's motion for summary judgment, seeking, *inter alia*, (1) a declaration that the

coverage issued by U.S. Liability is excess over and above the coverage issued by Mountain Valley,

and (2) payment by Mountain Valley to reimburse U.S. Liability for the amount of $225,000 paid

by U.S. Liability on behalf of Mobile Air to the settlement of an underlying action brought on behalf

of decedent Eric P. Curtis. Also before the Court is Mountain Valley's cross-motion for summary

judgment seeking (1) dismissal of plaintiffs' complaint, (2) a declaration that U.S. Liability's

insurance coverage to Mobile Air is primary to any coverage provided by Mountain Valley, and (3)

payment by U.S. Liability to reimburse Mountain Valley for the amount of $250,000 paid by

Mountain Valley to the estate of Eric P. Curtis for settlement of the aforementioned action. For the

reasons stated below, U.S. Liability's motion is granted, and Mountain Valley's cross-motion is denied.

BACKGROUND

A.    Factual History

On October 19, 2001, Eric P. Curtis was killed when his vehicle was struck by a freight delivery truck driven by William M. Lane. The collision took place on State Route 4 in the Town of Halfmoon, County of Saratoga, State of New York. At the time, Lane was an employee of Mobile Air, and was driving while in the course of his employment. Mobile Air, in turn, had leased the truck from Leroy Holding Company, Inc. ("Leroy Holding"), the owner of the vehicle.

Following this accident, Sheila Curtis, administratix of the estate of her late husband, filed a civil action against Lane, Mobile Air, Leroy Holding, and Hudson River Construction Co., Inc ("Hudson River") in the Supreme Court of the State of New York, Saratoga County, for negligence, wrongful death, and pain and suffering.[1]

Curtis's action settled for $1,500,000. According to the settlement decree, Lane, Leroy Holding, and Mobile Air were together responsible for contributing $1,450,000, while Hudson River was responsible for $50,000.

Of the $1,450,000, Mobile Air's primary insurer--a nonparty identified in the papers for both parties as "CGU"--contributed $1,000,000. The remainder was paid *equally* by U.S. Liability and Mountain Valley, $225,000 each. Mountain Valley was the primary insurer of Leroy Holding. U.S. Liability was the excess insurer of Mobile Air. Both insurance policies provided a maximum

---

[1] With respect to Hudson River, the allegation was that it failed to maintain the roadway in a safe condition for travel thereon by vehicles. Lane, Hudson River, and Leroy Holding are not parties to the captioned action.

coverage of $1,000,000.

That much is agreed upon. What is in dispute is which insurer is responsible for the $450,000 portion of the settlement that is in excess of the $1,000,000 paid by CGU. Mountain Valley believes U.S. Liability should be liable for the full $450,000. Unsurprisingly, U.S. Liability believes that Mountain Valley is liable for the full amount. As noted, the parties have for now decided to divide the cost evenly. Prior to resolving this dispute, I must first examine the various insurance and lease contracts between the parties.

B.     Policy Provisions

There are three separate contracts which are applicable in this case. They are as follows: (1) the Truck Lease and Service Agreement between Mobile Air and Leroy Holding, dated Aug. 3, 2000 (the "Truck Lease Agreement"). *See* Plaintiffs' Statement of Undisputed Facts and Exhibits, Oct. 11, 2004 ("Plaintiffs' Statement"), at Ex. C; (2) U.S. Liability's Commercial Umbrella Policy, numbered CUP 1004195 ("U.S. Liability's Policy"). *See* Plaintiff's Statement, at Ex. E; and (3) Mountan Valley's Commercial Automobile Policy, numbered 331-007692-03/000 ("Mountain Valley's Policy"). *See* Plaintiff's Statement, at Ex. D.

*1)     The Truck Lease Agreement*

The Truck Lease Agreement governed the rights and obligations of Mobile Air and Leroy Holding--the two insureds--with respect to each other. That lease agreement, which was operational at the time of the accident, provided in relevant part:

III. INSURANCE

A. Customer [Mobile Air] agrees to procure and maintain in full force and effect bodily injury and property damage liability insurance, covering both OWNER [Leroy Holding] and CUSTOMER as insureds, for all vehicles leased hereunder, of no less than $1,000,000 per

3

accident combined single limit of bodily injury and property damage....

G. Insurance required of the CUSTOMER shall be considered *primary*, and insurance of the OWNER shall be considered *excess*, as may be applicable to claims which arise out of this agreement or contract.

*See* Plaintiff's Statement, Ex. C (emphasis added).

2)      *U.S. Liability's Policy*

U.S. Liability's Policy provided insurance coverage to Mobile Air for the policy period of July 31, 2001 to July 31, 2002. That policy provided coverage of up to $1,000,000 per occurrence, and also provided in relevant part:

VII. CONDITIONS

7. Other Insurance

The insurance afforded by this policy shall be excess insurance over all underlying insurance covering a loss covered by this policy whether or not valid and collectible. *It shall also be excess insurance over all other valid and collectible insurance (except other insurance purchased specifically to apply in excess of this insurance) which is available to the Insured*, covering a loss also covered by this policy, not described in the Schedule of Underlying Insurance.

*See* Plaintiff's Statement, Ex. E, page 12 (emphasis added).

3)      *Mountain Valley's Policy*

Lastly, Mountain Valley's Policy provided insurance coverage to Leroy Holding for the policy period from May 1, 2001 to May 1, 2002. That policy also provided up to $1,000,000 in coverage, and provided in relevant part:

SECTION II - LIABILITY COVERAGE

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto"....

4

A. Coverage

1. Who Is An Insured

The following are "insureds":

a. You for any covered "auto".

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
(1) The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.
(2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.
(3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.
(4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".
(5) A partner (if you are a partnership), or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability....

SECTION IV - BUSINESS AUTO CONDITIONS

B. General Conditions

5. Other Insurance

a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage is excess over any other collectible insurance....

*See* Plaintiff's Statement, Ex. D.

A reading of the above cited policy provisions reveals an incongruity between the Truck Lease Agreement on the one hand, and, taken together, U.S. Liability's and Mountain Valley's Policies on the other. According to the Truck Lease Agreement, at § III.G, Mobil Air's insurance

coverage is *primary* to Leroy Holding's insurance coverage. Therefore, if the Truck Lease Agreement was the governing contract, then U.S. Liability (as Mobil Air's insurer) would be liable for the full $450,000 at dispute in this case.

On the other hand, a reading of U.S. Liability's Policy and Mountain Valley's Policy leads to the opposite conclusion. U.S. Liability's Policy, at § VII.7, states that it is in *excess* to any other "valid and collectible insurance . . . which is available to the Insured." Meanwhile, Mountain Valley's Policy, at § IV.B.5.a, states that it provides *primary* insurance with respect to any "covered auto," which includes Leroy Holding's vehicle. Therefore, if U.S. Liability's and Mountain Valley's Policies were the governing contracts, then Mountain Valley (as Leroy Holding's insurer) would be liable for the full $450,000.

Indeed, the parties are in agreement with this interpretation of the respective contracts. Where they disagree is on whether the Truck Leasing Agreement between Mobil Air and Leroy Holding takes legal precedence over the insurance companies' respective policies (a position advocated by Mountain Valley), or whether the insurance policies take legal precedence over the Truck Leasing Agreement (advocated by U.S. Liability and Mobil Air). I hold that the insurance policies prevail over the Truck Leasing Agreement.

ANALYSIS

The parties' briefs assume that the case is governed by New York law. There is no basis for the Court, exerting its diversity jurisdiction, to hold otherwise.

*United States Fid. & Guar. Co. v. CNA Ins. Cos.*, 618 N.Y.S.2d 465 (3d Dep't. 1994) involved a similar conflict between terms of contracts. In that case, the City of Albany, New York contracted with Lehigh Structural Steel Company ("Lehigh") to perform structural steel work at the

site of the Knickerbocker Arena, located within the city. Lehigh in turn subcontracted with the Syracuse Rigging Company, Inc. ("Syracuse Rigging") to install the steel. Beltrone Construction Company, Inc./McManus, Longe, Brockwehl, Inc. ("Beltrone") was the general contractor and construction manager of the project.

In its subcontract with Lehigh, Syracuse Rigging agreed to indemnify Beltrone against all claims arising out of the performance of the work, and to procure liability insurance naming Beltrone as an additional insured. Pursuant to that agreement, Syracuse Rigging obtained commercial liability insurance from United States Fidelity & Guaranty Company ("USFG"), naming Beltrone as an additional insured. Meanwhile, Beltrone itself had procured insurance from CNA Insurance Companies ("CNA").

After a Syracuse Rigging employee became injured on site and commenced a personal injury action against Beltrone, a dispute arose between conflicting terms of the various contracts. While, as stated above, Syracuse Rigging agreed in its subcontract with Lehigh to indemnify Beltrone against all claims, it was equally clear that both Syracuse Rigging's insurance policy with USFG and Beltrone's policy with CNA contained "identical 'other insurance' clauses which provided for contribution by equal shares between the [insurance] companies for defense and indemnification of Beltrone." *Id.* Therein lay the conflict.

The Court held that the insurance policies governed. It held that

the scope of the insurance coverage actually obtained by Syracuse Rigging and Beltrone must be determined by the terms of the [insurance] policies, not the terms of the subcontract. It is axiomatic that the rights and obligations of the parties under insurance contracts are predicated on the language of the policies and unambiguous provisions must be given their plain and ordinary meaning . . . . Here, the terms of both policies clearly and unequivocally provide for equal contribution towards the defense and indemnification of Beltrone, and *we are not at liberty to rewrite them to conform to the terms of a contract to which the insurance*

7

*companies were not parties*.

*Id* (emphasis added).

The Court found that the insurance provisions took precedence over Syracuse Rigging's subcontract with Lehigh. It held so, in part, because the insurance companies themselves were never parties to the subcontract agreed to by Syracuse Rigging and Lehigh.

The primacy of insurance provisions over subcontract provisions was also made apparent in *Travelers Indem. Co. v. American & Foreign Ins. Co.*, 730 N.Y.S.2d 231 (1st Dep't. 2001), where the Court held that "the motion court properly declined to give evidentiary weight to the insurance procurement provisions of the subcontract between plaintiff general contractor and the injured party's employer, since it is the policy provisions that control and not the provisions of the subcontract." *Accord National Union Fire Ins. Co. of Pittsburgh, Pa. v. Hartford Ins. Co. of the Midwest*, 677 N.Y.S.2d 105 (1st Dep't. 1998); *B.K. Gen. Contractors, Inc. v. Michigan Mut. Ins. Co.*, 612 N.Y.S.2d 198 (2d Dep't. 1994).

What these cases make clear is that insurance policy provisions take precedence over conflicting provisions found in contracts between insureds. Applying this general principle to the present case, I conclude that Mountain Valley's and U.S. Liability's respective insurance policies take precedence over Mobile Air's Truck Lease Agreement with Leroy Holding. Therefore, Mountain Valley is liable for the full amount of the $450,000.

Mountain Valley resists this conclusion by pointing to a recent decision in the New York Court of Appeals, *Pecker Iron Works of New York, Inc. v. Travelers Ins. Co.*, 99 N.Y.2d 391 (2003) ("*Pecker*"). Defendant argues that the *United States Fidelity & Guaranty* case, discussed *supra*, is no longer sound law in the State of New York because it has been overruled by *Pecker*. However,

the two cases are more akin to two ships passing in the night.

In *Pecker*, Pecker Iron Works of New York, Inc. ("PIW") engaged the services of a subcontractor, Upfront Enterprises ("Upfront") to provide labor, materials, and equipment for a construction project. Upfront also agreed to name PIW "as an additional insured." *Id.* at 392. Meanwhile, Upfront had an insurance contract with the Travelers Indemnity Company of Connecticut ("Travelers Indemnity") which provided that "additional insureds" (such as PIW) would only enjoy *excess* coverage *unless* Upfront had "agreed in a written contract for this insurance to apply on a primary or contributory basis." *Id.* at 393.

After an Upfront worker was injured on site and sued the general contractor, a dispute arose about whether Travelers Indemnity was obligated to provide PIW with excess or primary coverage. That issue turned on whether--in Upfront's agreement with PIW--Upfront had agreed in written form for its insurance coverage to apply to PIW on a primary basis, as was mandated by Upfront's insurance contract with Travelers Indemnity.

The Court held that Upfront had so agreed. It first noted the undisputed facts that Travelers Indemnity provided Upfront with primary coverage, and that Upfront agreed to make PIW an additional insured. The Court then held that "additional insured" is a "recognized term in insurance contracts, with an understanding crucial to our conclusion in this case." *Id.* That "well-understood meaning" was of an "entity enjoying the same protection as the named insured." *Id.* (citing cases). Due to this well-understood meaning of the term "additional insured," the Court held that Travelers Indemnity's insurance provided primary coverage for Upfront.

Conceptually, there is a qualitative difference between *Pecker* and the case before the Court. In the present case, there is no disagreement as to the *internal* provisions either of the Lease

Agreements or the insurance contracts. Both parties agree on the meanings of the various terms and conditions. The disagreement lies in the conflict *between* the Truck Lease Agreement on the one hand, and the insurance contracts on the other. In contrast, the dispute in *Pecker* lay strictly internal to the agreement between the insureds itself--that is, in the definition of the term "additional insureds." There was never a conflict between the insureds' agreement and the insurance provisions.

Mountain Valley submits that the Court of Appeals in *Pecker* "looked at the intent of the parties to the insurance procurement agreement, and found that by requesting additional insured coverage, the intent was for primary coverage to be procured." Defendant's Opposition, at 5. Mountain Valley argues that, similarly here, Mobile Air's *intent* to provide primary insurance coverage--as evident in the Truck Lease Agreement--trumps the language in the insureds' respective insurance agreements with their insurance providers.

I disagree. Defendant misinterprets the holding of *Pecker*, attempting to expand it beyond its reach. At issue in *Pecker* was whether Travelers Indemnity provided primary or excess coverage to Pecker, an "additional insured." The Court held that it was the intention of the insureds that Travelers Indemnity provide primary coverage to Pecker. This "intent" is garnered solely from the "well-understood meaning" of "additional insured," a term of art in the insurance universe.

That narrow holding cannot be said to apply to the present case, where questions concerning additional insured are not at issue. Based on prior precedent--which *Pecker* cannot be read to overrule--I find that it is the provisions found in the insurance policies which apply. Therefore, I hold that the coverage issued by U.S. Liability's insurance policy is excess to the coverage issued by Mountain Valley. For these same reasons, Mountain Valley's insurance policy covering Leroy Holding also provides primary coverage to Mobile Air.

Accordingly, U.S. Liability's motion for summary judgment is granted and Mountain Valley's cross-motion is denied.  Counsel for U.S. Liability are directed to settle a Judgment consistent with this Opinion on five (5) business days' notice.

It is SO ORDERED.

Dated: New York, New York
      May 23, 2005

CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE